529 A.2d 340

**Martin Francis SCOTT**

v.

**STATE of Maryland.**

**No. 105, Sept. Term, 1985.**

Court of Appeals of Maryland.

Aug. 5, 1987.

**280**

John L. Kopolow, Asst. Public Defender (Alan H. Murrell, Public Defender and George E. Burns, Jr., Asst. Public Defender, on the brief), Baltimore, for appellant.

Ronald M. Levitan, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., on the brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and SMITH *, ELDRIDGE, COLE, RODOWSKY, COUCH * and McAULIFFE, JJ.

ELDRIDGE, Judge.

In October 1981, a jury convicted Martin Francis Scott of premeditated murder and determined that his sentence should be death. On appeal, this Court held that, at the sentencing hearing, the trial court erroneously admitted evidence tending to show that Scott had committed two unrelated murders for which there had been no convictions. We vacated the death sentence and remanded for a new sentencing hearing. *Scott v. State,* 297 Md. 235, 465 A.2d 1126 (1983).

At the second sentencing proceeding, a new jury again decided to impose the death penalty. On this appeal from that sentence, Scott contends that the trial court committed numerous errors during the sentencing hearing. Scott's first argument is that the trial court erred by refusing to instruct the jury, as requested, that the State has the burden of establishing that aggravating circumstances outweigh mitigating circumstances. We shall hold that the

---

* Smith, J., and Couch, J., now retired participated in the hearing and conference of this case while active members of this Court; after being recalled pursuant to the Constitution Article IV, Section 3A, they also participated in the decision and adoption of this opinion.

trial court did err by refusing to give this instruction to the jury; therefore we shall vacate the death sentence and remand the case for another sentencing proceeding. Under these circumstances, we need not address any of the twelve other issues raised by Scott. But, for the guidance of the trial court, we shall address several of these issues which are likely to recur in the new sentencing proceeding.

I.

As indicated above, Scott contends that the trial court erroneously refused defense attorney's request for the court to instruct the jury that the State has the burden of persuading the jury that aggravating circumstances outweigh mitigating circumstances under the Maryland death penalty statute, Code (1957, 1982 Repl. Vol.), Art. 27, § 413(h). The State defends the trial judge's action on the ground that the proposed burden of proof instruction was included with other language which was inappropriate, and that, therefore, the trial judge was justified in rejecting the entire proposed instruction.

The facts underlying this issue are as follows. Both the defense and the prosecution submitted proposed jury instructions to the trial judge. Scott submitted "Proposed Instruction No. 9" which requested the trial judge to instruct the jury that the state bears the burden of establishing that the aggravating circumstances outweigh the mitigating circumstances. In its entirety, Proposed Instruction No. 9 was as follows:

"DEFENDANT'S PROPOSED INSTRUCTION NO. 9

"Your next duty will be to weigh any mitigating circumstances which exist against any aggravating circumstances which exist.

"Because the State is attempting to establish that death is the appropriate punishment, the State bears the burden of establishing that the aggravating circumstances which you find outweigh the mitigating circumstances. Unless you find, after considering the totality of the

aggravating and mitigating circumstances, that the aggravating factors, discounted by whatever mitigating circumstances exist, are sufficiently serious to require the sentence of death, you must impose life imprisonment. If a comparison of the totality of the aggravating factors with a totality of the mitigating factors leaves you in doubt as to the proper penalty, you must impose life imprisonment."

Using some proposed instructions submitted by both sides, the trial judge prepared a tentative draft of jury instructions. The trial judge incorporated into his draft the entire second paragraph of Scott's Proposed Instruction No. 9. Counsel on both sides were given a copy of the trial judge's draft, with directions to study it and inform the court as to any disagreement.

At a subsequent conference, the trial judge discussed with both parties the draft jury instructions. The judge indicated that he wanted to know "precisely" what each side objected to and that he would tailor the instructions "to accommodate, if it is possible." The prosecuting attorney cited the inclusion of the second paragraph of Scott's Proposed Instruction No. 9 as the State's "most significant objection." Focusing on the first sentence of the second paragraph, the prosecuting attorney argued that the proposed instruction was contrary to the law:

PROSECUTING ATTORNEY: "Paragraph 2 where it begins because the State is attempting to establish that death is the appropriate punishment, the State bears the burden of establishing that the aggravating circumstances which remain outweigh the mitigating circumstances.

"In fact, Your Honor, Article 27, Section 413 specifically says that unless the mitigating circumstances outweigh the aggravating circumstances, the sentence of death shall be imposed. As such, it [the proposed jury instruction] obviously shifts the burden considerably back to the State when the statute shifts the burden from the State to the defense."

In response to this argument, defense counsel maintained that the first sentence of the second paragraph of the proposed instruction accurately stated the law. He stated:

DEFENSE COUNSEL: "Our response is that that is the law that we believe should be. We have consistently raised in every case that the burden ought not to be on the defendant. It should be on the State. We are pursuing that in the Supreme Court. We are going to pursue it in future proceedings, and we are going to preserve the issue."

Later at the conference on the trial judge's tentative draft instructions, the discussion turned to the trial judge's draft summary, which was as follows:

"Under Art. 27, § 413, and Maryland Rule 772A, a sentencing proceeding before a jury can result in a death sentence in either of two ways:

(1) the jury unanimously finds one or more aggravating factors and no mitigating factors; or

(2) the jury unanimously finds both aggravating and mitigating factors and unanimously agrees that by a preponderance of the evidence the latter do not outweigh the former.

"A sentence of life imprisonment obtains in any of three situations:

(1) the jury unanimously finds no aggravating factors; or

(2) the jury unanimously finds both aggravating and mitigating factors and unanimously agrees that by a preponderance of the evidence the latter outweigh the former; or

(3) the jury, within a reasonable time, is unable to agree to a sentence." [1]

Scott objected to this summary on the ground that it failed to specify that the burden of proof concerning the weighing

---

1. Section (3) was later deleted by the trial court and was not read to the jury. The remainder of the draft summary was ultimately read to the jury.

of aggravating and mitigating circumstances was upon the State.

At the end of the conference, defense counsel expressed the desire that proposed instruction No. 9 not be refused on the grounds urged by the State, saying that the language concerning the burden of proof "is our attempt to rectify the constitutional problems with the statute."

The instructions given to the jury did not contain any of Scott's Proposed Instruction No. 9, nor did they contain any instruction regarding the State's burden of establishing that aggravating circumstances outweigh mitigating circumstances. Immediately after the instructions were given Scott again made his objections. He specifically objected to the failure to instruct the jury that the State bore the burden of proof with respect to the weighing of aggravating and mitigating circumstances. Later, defense counsel reiterated that Scott does "take exception to the failure of the Court to instruct the jury on the burden being placed on the State."

■ Contrary to the argument made by the State to the trial judge, this Court has consistently held that the State bears the burden of persuasion under § 413(h). In *Tichnell v. State*, 287 Md. 695, 730, 415 A.2d 830 (1980), we pointed out that § 413(h) "does not explicitly specify which party has the burden of producing evidence and the burden of persuasion." Nevertheless, we held that the State bears the burden of persuasion under § 413(h), saying (287 Md. at 730, 415 A.2d 830):

"Because the State is attempting to establish that the imposition of the death penalty is an appropriate sentence, the statute places the risk of nonpersuasion on the prosecution with respect to whether the aggravating factors outweigh the mitigating factors."

We have recently reiterated that the State bears the risk of nonpersuasion with regard to the weighing of aggravating and mitigating circumstances. *See Foster, Evans and Huffington v. State*, 305 Md. 306, 503 A.2d 1326, *cert.*

*denied,* —— U.S. ——, 106 S.Ct. 3310, 3315, 92 L.Ed.2d 722, 723, 745 (1986); *Foster v. State,* 304 Md. 439, 476–480, 499 A.2d 1236 (1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 3310, 92 L.Ed.2d 723 (1986).

This Court has also held that when a defendant requests a jury instruction containing a correct statement of the burden of persuasion under § 413(h), a trial judge should give such instruction or its equivalent. *Foster, Evans and Huffington v. State, supra,* 305 Md. at 317 n. 5, 503 A.2d 1326; *Evans v. State,* 304 Md. 487, 537 n. 18, 499 A.2d 1261 (1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 3310, 92 L.Ed.2d 722 (1986). In this case, the first sentence of the second paragraph of Scott's Proposed Instruction No. 9 was taken directly from the language of the *Tichnell* case quoted above. It was identical to language which, in *Foster, Evans and Huffington v. State, supra,* 305 Md. at 317, 503 A.2d 1326, we held should be given if requested.

■ Nevertheless, the State seeks to sustain the ruling of the court below on the ground that the second sentence of the second paragraph of Scott's Proposed Instruction No. 9 was incorrect and warranted the rejection of the entire proposed instruction. This sentence, which follows the sentence concerning the burden of proof, states: "Unless you find, after considering the totality of the aggravating and mitigating circumstances, that the aggravating factors, discounted by whatever mitigating circumstances exist, are sufficiently serious to require the sentence of death, you must impose life imprisonment." The State relies upon *Foster, Evans and Huffington v. State, supra,* 305 Md. at 317, 503 A.2d 1326, where this Court held that there was no reversible error in the trial court's rejection of the defendant Foster's proposed instruction which was essentially the same as Proposed Instruction No. 9 in the case at bar. In the *Foster* case, however, the proposed instruction was requested only in its entirety, and the disputed issue there did not concern the sentence relating to the allocation of the burden of proof. The defendant in *Foster* did not independently seek an instruction concerning the allocation of the

burden of proof under § 413(h) or specifically object to the trial judge's failure to give such instruction. When the proposed instruction in *Foster* was submitted, the trial court, referring to the sentence which was the same as the second paragraph, second sentence, of Scott's Proposed Instruction No. 9, stated that the language was "confusing" and rejected the proposed instruction. The defendant Foster did not then or thereafter specifically raise any issue as to which side bore the risk of non-persuasion regarding the weighing of aggravating and mitigating factors. This Court upheld the trial court's action on the ground that the "next sentence [after the sentence concerning burden of proof] of the requested instruction contained language going beyond the weighing or balancing process contemplated by the statute. At the very least, the language ... was confusing, and this was pointed out by the trial judge." 305 Md. at 317, 503 A.2d 1326.

In the present case, unlike *Foster*, the State's objection to the proposed instruction was over which side had the burden of persuasion regarding the weighing process. The defendant Scott made it clear that he wanted an instruction placing this burden on the prosecution, and he objected to the absence of such an instruction. The trial court's ruling was that, under the statute, the defendant had the burden of persuading the jury that mitigating factors outweighed aggravating factors. This ruling was erroneous, was prejudicial, and entitles Scott to a new sentencing hearing.

## II.

Next, the defendant Scott contends that the trial court erred by refusing to include his Proposed Instructions Nos. 11 and 14 in its charge to the jury. Proposed Instructions Nos. 11 and 14 were as follows:

"DEFENDANT'S PROPOSED INSTRUCTION NO. 11

"You may not impose the sentence of death unless you are convinced beyond a reasonable doubt that aggravating factors are more compelling than the mitigating

factors and that the death penalty is justified and appropriate."

## "DEFENDANT'S PROPOSED INSTRUCTION NO. 14

"You need not find a mitigating circumstance in order to impose a sentence of life imprisonment. Nothing in the law forbids you from extending mercy out of compassion or belief that life imprisonment is sufficient punishment under all the circumstances."

Scott asserts that these instructions would help guide the jurors in the weighing process under § 413(h). Additionally, Scott alleges that the proposed instructions would reduce the risk that the jury will incorrectly interpret its weighing process as mandating a sentence of death. According to Scott, the absence of these instructions may leave the jury unaware that mercy or compassion may enter into the deliberative process.

As our previous cases make clear, the statutory scheme embodied in § 413(h) requires a jury to weigh the aggravating and mitigating circumstances in order to determine the sentence. *See, e.g., Mills v. State,* 310 Md. 33, 55, 527 A.2d 3 (1987); *Foster v. State, supra,* 304 Md. at 476–480, 499 A.2d 1236; *Maziarz v. State,* 302 Md. 1, 6, 485 A.2d 245 (1984); *Thomas v. State,* 301 Md. 294, 333–334, 483 A.2d 6 (1984), *cert. denied,* 470 U.S. 1088, 105 S.Ct. 1856, 85 L.Ed.2d 153 (1985); *Trimble v. State,* 300 Md. 387, 413, 478 A.2d 1143 (1984), *cert. denied,* 469 U.S. 1230, 105 S.Ct. 1231, 84 L.Ed.2d 368 (1985); *Tichnell v. State,* 297 Md. 432, 444, 468 A.2d 1 (1983); *cert. denied,* 466 U.S. 993, 104 S.Ct. 2374, 80 L.Ed.2d 846 (1984); *Johnson v. State,* 292 Md. 405, 437–439, 439 A.2d 542 (1982); *Tichnell v. State,* 290 Md. 43, 47, 427 A.2d 991 (1981); *Tichnell v. State, supra,* 287 Md. at 725–726, 415 A.2d 830. A proposed instruction which is inconsistent with or disregards the statutorily required weighing process is properly denied. *State v. Tichnell,* 306 Md. 428, 467–468, 509 A.2d 1179, *cert. denied,* —— U.S. ——, 107 S.Ct. 598, 93 L.Ed.2d 598 (1986).

■ An examination of Scott's Proposed Instructions Nos. 11 and 14 reveals that they were improper. Scott's Proposed Instruction No. 11 would tell the jury that a death sentence may not be imposed unless the jury was convinced "beyond a reasonable doubt that the aggravating factors are more compelling than the mitigating factors and that the death penalty is justified and appropriate." As pointed out in Part VII of this opinion, *infra,* the "reasonable doubt" standard is incorrect. With regard to the last clause of Proposed Instruction No. 11, we held in *State v. Tichnell, supra,* 306 Md. at 467–468, 509 A.2d 1179, that the trial court properly refused a similar instruction:

"Tichnell also claimed that the trial court erred in failing to instruct the sentencing jury that it had the option of imposing a life sentence without regard to the relative weight of aggravating and mitigating circumstances, and must find beyond a reasonable doubt that a death sentence was appropriate before that sentence could be imposed.... We note, however, that the proposed instruction would sanction total disregard for the statutorily mandated weighing process in the sentencing jury's determination whether to impose a life or death sentence. Therefore, the failure to give such an instruction was not error. As the State maintains, if life sentences could be imposed without regard to articulated aggravating and mitigating factors, there would be no principled or rational way to differentiate the few cases in which the death penalty is justified from the many in which it is not. Nothing in the statute requires that the jury be instructed that it must find beyond a reasonable doubt that death is the appropriate sanction before that sentence may be imposed. *See Foster, Evans and Huffington v. State,* 305 Md. 306, 503 A.2d 1326 (1986); *Evans v. State,* 304 Md. 487, 499 A.2d 1261 (1985); *Foster v. State,* 304 Md. 439, 499 A.2d 1236 (1985)."

■ The trial court also did not err by refusing to instruct the jury in accordance with Scott's Proposed Instruction No. 14. The instruction would inform the jurors that they need

not find a mitigating circumstance in order to impose a sentence of life imprisonment. This conflicts with the statutory scheme which requires a jury to impose a death sentence when no mitigating circumstances are found if at least one aggravating factor has been established beyond a reasonable doubt. *See Mills v. State, supra,* 310 Md. at 54, 527 A.2d 3.

■ Scott's Proposed Instruction No. 14 would also tell the jury that "[n]othing in the law forbids you from extending mercy out of compassion or belief that life imprisonment is sufficient punishment under all the circumstances." While the statement is not false, the requested instruction fails to inform the jury that the "mercy" is to be considered through the statutory framework of § 413. In *Grandison v. State,* 305 Md. 685, 755–756, 506 A.2d 580, *cert. denied,* — U.S. ——, 107 S.Ct. 38, 93 L.Ed.2d 174 (1986), the Court held that the trial judge's refusal to give this same instruction was not error. We explained that to instruct the jury in this fashion "would have negated the carefully thought out sentencing procedure designed to meet the constitutional requirements set forth by the Supreme Court by injecting the risk of arbitrary and capricious action into the proceeding." 305 Md. at 757, 506 A.2d 580.

The framework provided in § 413 allows a sentencer to find as a mitigating circumstance "[a]ny other facts which the jury or court specifically sets forth in writing that it finds as mitigating circumstances in the case." § 413(g)(8). This "catchall" provision permits a jury to extend mercy if it is so inclined. *Grandison v. State, supra,* 305 Md. at 756, 506 A.2d 580. As stated in *Foster v. State, supra,* 304 Md. at 474–475, 499 A.2d 1236:

"A sentencing authority, unconvinced that death is appropriate, may list as a mitigating circumstance whatever factor or factors may have led to this conclusion, irrespective of what the defendant produced or argued. If the sentencing authority perceives anything relating to the defendant or the crime which causes it to believe that death may not be appropriate, it may treat such factor as

a mitigating circumstance and decide that it outweighs the aggravating circumstances."

It is in this framework, by designating as a mitigating factor whatever the jurors believe makes the death sentence inappropriate, that the matters urged by Scott are to be considered. As Scott's Proposed Instructions Nos. 11 and 14 represent a departure from this scheme, they were properly denied.

## III.

■ Scott complains that the trial judge erred by explaining to the jury that nonstatutory mitigating circumstances have a legal status different from statutory mitigating circumstances. This argument was advanced and rejected in *Bowers v. State*, 306 Md. 120, 144–150, 507 A.2d 1072, *cert. denied*, —— U.S. ——, 107 S.Ct. 292, 93 L.Ed.2d 265 (1986); and *Foster v. State, supra*, 304 Md. at 482, 499 A.2d 236. Our holding in *Foster* was set forth as follows (*ibid.*):

"The defendant's first argument is that it was error for the trial judge to instruct the jury, and the State to argue, that the nonstatutory mitigating circumstances had a different legal status than the first seven listed. This argument is totally lacking in merit. The two types of mitigating circumstances obviously are different, as explained by the trial judge. With regard to those factors listed in § 413(g)(1)–(7), the Legislature has, as a matter of law, deemed them to be mitigating. As to them, the only issue to be decided by the jury under subsection (g) is whether one or more of the circumstances existed in the case. Regarding the other group, however, the Legislature has not deemed these factors to be mitigating as a matter of law. With respect to numbers eight through eighteen on the verdict sheet, the jury was required to decide two issues under subsection (g): 1. did the alleged circumstance exist in the case? 2. is it mitigating? This is all that the trial judge and prosecuting attorney were attempting to explain."

Scott argues that the position taken by us in *Foster* and by the trial court in the present case is inconsistent with the Supreme Court's opinions in *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 2981, 57 L.Ed.2d 973 (1978), and *Eddings v. Oklahoma,* 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982). We agree with the trial judge's statement in the present case that the *"Lockett-Eddings* mandate does not go so far as to *require* that every piece of evidence proposed by the defendant as a nonstatutory mitigator actually be regarded by the jury as a mitigating circumstance to be weighed against the aggravating circumstances."

## IV.

Scott also maintains that the trial court erred by prohibiting him from contesting the qualification of a prosecution witness as an expert. Specifically, Scott wanted to show that Dr. Michael Spodak, a state psychiatrist, was not qualified as an expert due to his numerous, repetitive appearances as a witness for the State in capital cases.

The State called Dr. Spodak as an expert witness to rebut Scott's contentions that Scott was significantly or substantially impaired at the time of the offense. On direct examination concerning Dr. Spodak's qualification as an expert, the State elicited information about the education, employment and professional history of Dr. Spodak.

The defense began to cross-examine Dr. Spodak as to his qualifications by asking him, "[H]ow many death penalty cases have you testified in?" The State objected, and a bench conference ensued. Defense counsel proffered what he hoped to establish by this line of cross-examination:

"Your Honor, I would proffer that I would ask Dr. Spodak how many, whether he has testified in death penalty cases. His answer would be yes, I would ask him how many death penalty cases he has testified in. That the answer would be approximately. I don't know the exact answer, but my approximate would be around 11 or 12 figure, and then I would ask him how many of those cases did he testify at the request of a State's Attorney's

Office. I would estimate—I don't have the exact numbers—but it would be in the order of nine or ten. I am aware of two that he testified for the defense, one in Pennsylvania and another one in Prince George's County. That would be what we would have elicited."

.    .    .    .    .    .    .    .    .    .

"Your Honor, for the record, I really am saying this for the Court of Appeals, that I believe this is a problem that they need to look at where a doctor has begun to establish a reputation and to make his living off of testifying for the State, a good portion of it, and basically coming in on each and every case and saying the same thing and using the same routine. We have transcripts that show repeatedly the same. The statements that were made in the Scott case previously, what we expect him to say now are very similar, that he uses the same routine in an attempt to help the State put the person away. We will note for the Court as a matter of record, Dr. Jonas Rappaport, he is a man with principle, a principle decent position which we might respect and deal with. I think Dr. Spodak's position now in the legal community is different and the Court of Appeals sooner or later may have to deal with it. I would object to him being qualified as an expert."

The trial court sustained the objection on the ground that this challenge was not relevant to Dr. Spodak's qualification as an expert but went to the weight, if any, his testimony should be given.

Dr. Spodak testified as an expert witness for the State and was cross-examined by defense. The following exchange concluded the cross-examination:

"Q. This is not the first [death] penalty case that you have testified in; is it, Doctor?

"A. No, it isn't.

"Q. What number, how many death penalty cases have you testified?

"A. Probably about eight or nine.

"Q. How many of them were you a witness for the State?

"A.   I was a witness for the defense in two so the rest for the State, would be the rest.

"Q.   The rest are for the State."

On this appeal, Scott contends "that [the] ruling was an uninformed one because the trial judge refused to take into account the defense's proposed cross-examination." (Appellant's brief, p. 57).   We fail to see how the trial judge's determination was uninformed, as he had the benefit of defense counsel's detailed proffer of the proposed cross-examination.   After hearing this proffer, the trial judge properly concluded that such testimony did not preclude Dr. Spodak's qualification as an expert witness.

It is well-settled that a trial judge has broad discretion to admit expert testimony, and his decision in this regard is subject to reversal only for an error of law or abuse of discretion.   *Johnson v. State*, 303 Md. 487, 515, 495 A.2d 1 (1985), *cert. denied*, 474 U.S. 1093, 106 S.Ct. 868, 88 L.Ed.2d 907 (1986); *Stebbing v. State*, 299 Md. 331, 350, 473 A.2d 903, *cert. denied*, 469 U.S. 900, 105 S.Ct. 276, 83 L.Ed.2d 212 (1984); *Raithel v. State*, 280 Md. 291, 301, 372 A.2d 1069 (1977); *Radman v. Harold*, 279 Md. 167, 173, 367 A.2d 472 (1977).   Questions concerning the qualification of an expert witness are for the trial court to decide preliminarily as a matter of law.   *Trimble v. State, supra*, 300 Md. at 404, 478 A.2d 1143.   A witness is qualified as an expert if he possesses "such special knowledge of the subject on which he is to testify [so] that he can give the jury assistance in solving a problem for which their equipment of average knowledge is inadequate."   *Casualty Ins. Co. v. Messenger*, 181 Md. 295, 298–299, 29 A.2d 653 (1943).

Contrary to Scott's assertion, the implication that Dr. Spodak is a "professional witness" for the State is not particularly relevant to Dr. Spodak's qualification as an expert witness.   As we stated in *Trimble v. State*, 300 Md. at 404, 478 A.2d 1143:

"The court's threshold determination simply represents a finding that the expert has the minimum degree of exper-

tise necessary to allow him to state an opinion as to a given set of facts; it does not mean that the jury is bound to believe all or any part of his testimony. Rather, the quality, bias, strength, basis, and sincerity of an expert opinion can still be attacked before the jury as a matter of credibility."

Evidence tending to show that an expert witness has frequently testified or otherwise been involved in litigation for one party directly relates to the weight a jury may give the testimony. *See Ager v. Baltimore Transit Co.*, 213 Md. 414, 427–428, 132 A.2d 469 (1957) (questioning a doctor as to how many times he had examined persons referred to him by counsel for one of the parties is admissible to test the weight and credit of his testimony). *See also,* Annot., *Propriety of Cross-Examining Expert Witness Regarding His Status as "Professional Witness,"* 39 A.L.R. 4th 742 (1985).

An argument similar to Scott's was rejected in *Carbone v. Warburton,* 11 N.J. 418, 94 A.2d 680 (1953) (Brennan, J.). Carbone, the defendant in a medical malpractice action, attempted to cross-examine Dr. Jacobson as to his previous litigation experience. The Supreme Court of New Jersey said (94 A.2d at 685):

"[Carbone] argues that the trial court improperly refused to permit cross-examination of Dr. Jacobson as to whether the doctor solicited lawyers for the employment of his services in malpractice cases and as to whether it was true that the doctor was adjudged unqualified to testify in other malpractice cases tried in New Jersey courts. We think the trial judge was clearly right. The subject of Dr. Jacobson's alleged solicitation of lawyers does not go to his qualifications although it would be a proper matter for inquiry to show bias in any opinion testimony adverse to the defendant which he may be permitted to give on the retrial. And since the question in the particular case is his competency to testify concerning the medical standards applicable to the injury in suit, it cannot be relevant for any purpose that he was found disqualified to testify

in other cases where the pertinent standards may have been very different."

■ In the case at bar, the trial court did not abuse its discretion or commit an error of law when it determined that Dr. Spodak was qualified as an expert. On the other hand, the trial court properly recognized that the cross-examination sought by Scott is relevant to the weight and credibility of Dr. Spodak's testimony. Dr. Spodak's history as a State's witness was ultimately presented to the jury when defense counsel cross-examined Dr. Spodak on his testimony.

### V.

■ Scott argues that double jeopardy and collateral estoppel principles required the jury to find a mitigating circumstance found by the sentencing jury at his first trial.

In Scott's first sentencing proceeding, which we vacated, the jury found two mitigating circumstances, one being that "[t]he murder was committed while [Scott's mental] capacity ... was substantially impaired." *Scott v. State, supra,* 297 Md. at 241–242, 465 A.2d 1126. The jurors in this second sentencing proceeding unanimously agreed that this mitigating circumstance did not exist. Scott maintains that the trial judge was required to instruct the jury that it had to find the mitigating circumstance found by the jury in the first sentencing proceeding. This same argument was rejected in *Johnson v. State, supra,* 303 Md. at 519–522, 495 A.2d 1, and *State v. Tichnell, supra,* 306 Md. at 463, 509 A.2d 1179. We hold that the trial court correctly refused to give this instruction.

### VI.

■ It is contended that the trial court erred by permitting the State to introduce evidence of Scott's conviction for an unrelated murder. The unrelated murder occurred one day after the murder involved in the instant case. Scott pled guilty to this unrelated murder after the first sentenc-

ing proceeding in this case but prior to the second sentencing proceeding after our remand.

Before the second sentencing hearing began, Scott filed a motion asking the trial court to bar the admission of his conviction for the unrelated murder. The trial court denied the motion, explaining that such evidence was admissible under Art. 27, § 413(c)(1)(iii). At the close of the State's presentation to the jury, the trial court admitted into evidence, over Scott's objection, the docket entry reflecting Scott's conviction for the unrelated murder.

Art. 27, § 413(c)(1), sets forth the evidence admissible in a capital sentencing proceeding. It provides:

"(c) *Evidence; argument; instructions.*—(1) The following type of evidence is admissible in this proceeding:

(i) Evidence relating to any mitigating circumstance listed in subsection (g) of this section;

(ii) Evidence relating to any aggravating circumstance listed in subsection (d) of this section of which the State had notified the defendant pursuant to § 412(b) of this article;

(iii) *Evidence of any prior criminal convictions,* pleas of guilty or nolo contendere, or the absence of such prior convictions or pleas, *to the same extent admissible in other sentencing procedures;*

(iv) Any presentence investigation report. However, any recommendation as to sentence contained in the report is not admissible; and

(v) Any other evidence that the court deems of probative value and relevant to sentence, provided the defendant is accorded a fair opportunity to rebut any statements." (Emphasis added).

Scott's argument is that the word "prior" as used in § 413(c)(1)(iii) means "prior to the capital offense" and does not simply refer to "prior to the sentencing proceeding." Scott insists that, because the unrelated conviction was not obtained prior to the offense involved in the instant case, it was not admissible under § 413(c)(1)(iii). We disagree.

The word "prior" is not further defined or explained in § 413. The normal meaning of the word, standing alone in a statutory provision dealing with a capital sentencing proceeding, would seem to be "prior to the capital sentencing proceeding" and not "prior" to some other event.

Furthermore, the expressed purpose of § 413(c) was to set forth "the evidentiary character" of a capital sentencing proceeding. Ch. 3 of the Laws of 1978; *Scott v. State, supra,* 297 Md. at 249, 465 A.2d 1126. By allowing only evidence of *convictions* instead of crimes generally, § 413(c)(1) restricts the type of evidence admissible in a capital sentencing hearing compared to the evidence admissible in a non-capital sentencing proceeding. *Johnson v. State, supra,* 303 Md. at 525, 495 A.2d 1; *Scott v. State, supra,* 297 Md. at 247, 249, 465 A.2d 1126. The General Assembly did not intend to restrict further the type of evidence admissible in capital sentencing proceedings compared to other sentencing proceedings, as § 413(c)(1)(iii) states that the prior conviction evidence shall be admissible "to the same extent admissible in other sentencing procedures." It is clear that evidence of convictions obtained before sentencing is admissible in "other sentencing procedures." *Logan v. State,* 289 Md. 460, 480–481, 425 A.2d 632 (1981); *Bartholomey v. State,* 267 Md. 175, 193–194, 297 A.2d 696 (1972). *See also Wasman v. United States,* 468 U.S. 559, 569–570, 104 S.Ct. 3217, 3223, 82 L.Ed.2d 424 (1984); Annot., *Court's Right, in Imposing Sentence, to Hear Evidence of, or to Consider, Other Offenses Committed by Defendant,* 96 A.L.R.2d 768 (1964).

Interpreting similar statutory provisions, other courts have reached the same conclusion we reach today. In *Jones v. State,* 381 So.2d 983 (Miss.), *cert. denied,* 449 U.S. 1003, 101 S.Ct. 543, 66 L.Ed.2d 300 (1980), the Supreme Court of Mississippi said (381 So.2d at 994):

"Among the aggravating circumstances available for consideration in capital cases under Mississippi Code Annotated section 99–19–101 (Supp.1979), subsection (5)(b) is that: 'The defendant was *previously* convicted of another

capital offense or of a felony involving the use or threat of violence to the person.' (Emphasis added). In employing the word 'previously,' the statute designates no time frame. The question arises as to whether the legislature meant previous to the commission of the capital offense or previous to the trial for it.

"We conclude the legislature intended to relate the word 'previously' to the time of trial, so that a conviction between the time the capital offense was committed and the time of trial for it may be admitted into evidence as an aggravating circumstance. We think this, because a wide leeway is permitted the appellant to offer mitigating circumstances in avoidance of the death sentence, while an extremely limited type of behavior may be offered by the state in seeking capital punishment. In our opinion, the legislature undoubtedly intended a weighing of both at the time of sentencing so the past behavioral patterns likely to affect the defendant's future behavior might be evaluated by the jury in deciding whether the defendant will live or die. We think there is no more justification for terminating consideration of the defendant's criminal behavior at the time of the offense than there is for terminating consideration of favorable behavior at that time. All go to the question of whether the most severe punishment will serve a legitimate social purpose untainted by vindictiveness."

The Supreme Court of Georgia had earlier come to a similar conclusion in *Gates v. State,* 244 Ga. 587, 261 S.E.2d 349, 356 (1979), *cert. denied,* 445 U.S. 938, 100 S.Ct. 1332, 63 L.Ed.2d 772 (1980):

"Defendant contends that the court erred in admitting into evidence over objection defendant's pleas of guilty to three unrelated crimes, committed after the crimes for which defendant was being tried....

                *    *    *    *    *    *

"Defendant asserts that such 'prior criminal convictions and pleas of guilty,' as to crimes committed after the

murder for which he was on trial, are not admissible under Code Ann. § 27-2503, the scheme of which he contends is to provide more severe punishment for incorrigibles than for those who have not yet had the opportunity to be rehabilitated by the penal system. Defendant misinterprets the law. The cited Code section provides a scheme for presenting defendant's history to the sentencing authority (the jury in death cases) so that it may make the proper decision as to punishment. At issue for sentencing purposes is the status of the defendant at the time of sentencing, not his status at the moment he committed the crimes for which he was tried. The court did not err in admitting these prior pleas in the sentencing phase. See *Clark v. State,* 146 Ga.App. 799, 800, 247 S.E.2d 489 (1978). On the one hand the defendant is allowed to introduce evidence in mitigation, and on the other hand the state is allowed to introduce prior pleas and convictions."

*See also Coulter v. State,* 438 So.2d 336, 346–347 (Ala.Cr. App.1982), *aff'd,* 438 So.2d 352 (Ala.1983); *Lucas v. State,* 376 So.2d 1149, 1152–1153 (Fla.1979). *Contra: State v. Rust,* 197 Neb. 528, 250 N.W.2d 867, 872–873, *cert. denied,* 434 U.S. 912, 98 S.Ct. 313, 54 L.Ed.2d 198 (1977); *State v. Goodman,* 298 N.C. 1, 257 S.E.2d 569, 583 (1979).

We hold that "prior" as it is used in § 413(c)(1)(iii) relates to convictions obtained before the sentencing proceeding itself. Hence the trial court did not err in admitting evidence of Scott's conviction for an unrelated murder obtained after the capital offense and prior to the second sentencing proceeding.

## VII.

■■■ Scott maintains that the Maryland capital punishment statute is unconstitutional on the ground that "a death sentence imposed on proof by a preponderance of the evidence" that aggravating circumstances outweigh miti-

gating circumstances "is cruel and unusual punishment and a violation of due process." (Appellant's Brief, p. 76). In essence, Scott asks us to reconsider our opinions in *Tichnell v. State, supra,* 287 Md. at 731–732, 415 A.2d 830, and *Foster v. State, supra,* 304 Md. at 477, 499 A.2d 1236, and require a higher standard of proof by the State. This we decline to do.

## VIII.

Finally, Scott asserts that the trial court erred by denying Scott's motion to dismiss the indictment and the notice of intention to seek the death penalty. Scott sought to penalize the State for public statements allegedly amounting to prejudicial pre-trial publicity and allegedly violating a "gag order" agreement between the parties.

After Scott's initial death sentence was reversed on appeal, *Scott v. State, supra,* 297 Md. 235, 465 A.2d 1126, the State's Attorney for Baltimore City was quoted in the newspaper as saying: " 'I don't argue that the Court of Appeals ought to scrutinize very closely all death penalty cases, but it seems to me they have gone beyond close scrutiny and are demanding perfection.' " Defense counsel also proffered that after Scott pled guilty to an unrelated murder, an assistant state's attorney was quoted in the newspaper as saying that

> "he considered it his duty to be sure that 'Martin Scott doesn't ever see the public light of day.' ... [and that] 'he may be the one, the first to be put to death.' That is a really tight case. They, the court, have a death penalty in front of them."

The trial judge denied the motion, finding that there existed no jury contamination, no breach of any "gag order" agreement, and no prosecutorial misconduct. On this appeal, Scott argues that the behavior in making these public statements was so outrageous that due process prin-

ciples required dismissal of the indictment and death penalty notice.

Scott has not shown that the trial judge's findings regarding this matter are erroneous. In fact, Scott admits that, of the four jurors who had previous knowledge of the case, "[a]ll of them ... have indicated that what knowledge they have would not affect them in this case."

Additionally, even if the trial judge had found any prejudice, the most severe appropriate remedy under the circumstances would be to grant a new sentencing proceeding; dismissal would not be appropriate.[2] For the reasons stated in Part I of this opinion, a new sentencing proceeding is being granted on other grounds.[3]

DEATH SENTENCE VACATED. CASE REMANDED FOR A NEW SENTENCING PROCEEDING UNDER § 413 OF ARTICLE 27. COSTS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.

---

**2.** Scott relies on several cases where indictments were dismissed because of prosecutorial misconduct. *See, e.g., United States v. Hogan,* 712 F.2d 757 (2d Cir.1983); *United States v. Levy,* 577 F.2d 200 (3d Cir.1978); *United States v. Brodson,* 528 F.2d 214 (7th Cir.1975); *Greene v. United States,* 454 F.2d 783 (9th Cir.1971). The circumstances of those cases were entirely different from what was involved in the present case. None of the cited cases would be authority for a dismissal in the present case.

**3.** One additional issue warrants mention. In 1982, prior to the instant sentencing proceeding, Scott gave taped television interviews to the Independent News Network and the Public Broadcasting Service (PBS). In the PBS tape, Scott referred to and commented on the governor's constitutional authority to spare the life of an inmate sentenced to death. At the second sentencing hearing, during cross-examination of Scott's expert witness, the court allowed the State, over objection, to paraphrase Scott's taped remarks concerning the governor. Scott contends that the State violated an agreement that these remarks were irrelevant, and that even absent any agreement, the prejudicial nature of the paraphrased material outweighs its relevancy. In our view, this is a very close issue. Nevertheless, as with other matters raised by Scott, we need not reach this issue as we believe that the circumstances creating the issue in this case will not be repeated in a new sentencing proceeding.