Dear Ms. Barnhart:
You have asked for an opinion on the procedure for determining the sufficiency of a petition that may be submitted in an effort to bring a public local law recently enacted by the General Assembly to referendum. As you note, the recent recodification of Article 33 of the Annotated Code of Maryland (the "Election Code") raises a question about whether sufficiency determinations are to be made at the State level or by the local board of elections with the legal advice of the county attorney. We believe that the best reading of all relevant Election Code provisions, together with Article XVI of the State Constitution, requires that the determinations be made at the State level — that is, by the State Board of Elections, with the assistance of its counsel, the Attorney General.[1]
 I Background Chapter 75
Your question arises in connection with Chapter 75, Laws of Maryland 2000 (Senate Bill 509), a bill introduced at the request of Baltimore County and enacted by the General Assembly during its most recent session. The major purposes of the law were to "authoriz[e] Baltimore County to undertake and carry out projects for residential, commercial, or industrial development and redevelopment" in three specifically defined "renewal areas" within the County, and to "authoriz[e] Baltimore County to exercise the power of eminent domain," if necessary, to acquire certain specifically identified properties within those renewal areas. After passage of the bill, opponents announced their intention to petition the legislation to referendum.
 The Referendum
Under Article XVI of the State Constitution, ratified in 1915, the effective date of any law enacted by the General Assembly, with certain exceptions not pertinent here, may be suspended pending its submission to the voters for approval or rejection. The effectiveness of the law is postponed if a sufficient number of petition signatures is filed with the Secretary of State before June 1 following the passage of the law. Article XVI, § 2.[2] The Secretary of State is to refer a public general law[3] to the voters statewide if the Secretary receives a petition signed by voters equal in number to at least three percent of the votes cast for Governor at the last preceding gubernatorial election. The Secretary of State is to refer a public local law[4] to the voters of the affected county or Baltimore City if the Secretary receives a petition signed by voters of that jurisdiction equal in number to at least ten percent of the votes cast for Governor by voters of that jurisdiction at the last gubernatorial election. Article XVI, § 3(a).
Certain technical requirements for a referendum petition are set forth in Article XVI itself, which also directs the General Assembly to "prescribe by law the form of the petition, the manner for verifying its authenticity, and other administrative procedures which facilitate the petition process." Article XVI, § 4. The Constitution expressly qualifies this grant of authority by specifying that the petition procedures and forms prescribed by the General Assembly must not conflict with Article XVI.Id.[5] Article XVI, § 5 deals with how the voters are to be notified about issues put to referendum, how the referred laws are to be placed or described on official ballots, and how the results of a referendum are to be returned and announced.
The General Assembly has implemented Article XVI of the Constitution through laws that are gathered, since the 1998 recodification of the Election Code, primarily in Titles 6 (Petitions) and 7 (Questions) of Article 33. These titles apply not only to referenda on acts of the General Assembly under Article XVI of the Constitution, but also to questions submitted to the voters pursuant to petition under other provisions of the Constitution, and to referenda on public local laws enacted by the legislative bodies of home rule counties. Article 33, § 7-101. Seealso Annotated Code of Maryland, Article 25A, § 8 (permitting citizens of a chartered county to reserve in their charter the right of referendum); Article 25B, § 10(h) (authorizing citizens of a code home rule county to petition to referendum public local laws enacted by the board of county commissioners). Among other things, Titles 6 and 7 provide for the content of petitions and specify how determinations about the sufficiency of petitions are to be made and how referendum questions are to be placed on the ballot.
The petition process laid out in Title 6 allows the sponsors of a petition drive to submit the format of their petition to election officials for an "advance determination" of sufficiency. Article 33, § 6-202. After the sponsors collect the signatures of registered voters in an effort to obtain the required number of verifiable signatures, the sponsors attach an "information page" and formally file the petition in the office of "the appropriate election authority" specified in § 6-205(a). The chief election official of that election authority determines the sufficiency of the petition as to matters other than the validity of signatures. Section 6-206. This determination must be consistent with any advance determination made under § 6-202. Article 33, § 6-206(d).
The staff of the election authority, or if the election authority is the State Board of Elections, the staffs of the local election boards, then verify and count the signatures on the petition. Article 33, §§ 6-205(b), 6-207. At the conclusion of the verification and counting, the chief election official of the election authority certifies the result of the petition process — in the case of a referendum petition, whether the question has qualified to be placed on the ballot. Article 33, § 6-208. Anyone aggrieved by a decision made under Article 33, § 6-202, § 6-206, or § 6-208 may seek judicial review. Article 33, § 6-209.
 "Local Petition"
Your specific question involves the application of Title 6 in the context of a petition concerning Chapter 75, a public local law passed by the General Assembly and applicable to Baltimore County.[6] More particularly, it arises because of the different treatment of statewide and local petitions under Title 6. Central to your question is the definition of "local petition" that appears in § 6-101(g):
 (g) Local petition. — "Local petition" means a petition:
 (1) On which the signatures from only one county may be counted; and
(2) That does not seek to:
 (i) Refer a public general law enacted by the General Assembly; or
 (ii) Nominate an individual for an office for which a certificate of candidacy is required to be filed with the State Board.
Read literally, this definition would appear to include within the term "local petition" a petition, such as the one now being circulated with respect to Chapter 75, that seeks to refer a public local law enacted by the General Assembly. Under paragraph (1) of § 6-101(g), signatures from only one county would be counted in connection with such a petition, and under paragraph (2) of that section, the petition would seek neither to refer a publicgeneral law nor to nominate an individual for an office for which a certificate of candidacy would be filed with the State Board of Elections.
If a petition seeking to refer a public local law enacted by the General Assembly is a "local petition," then the "election authority" responsible for making determinations about the sufficiency of that petition is the local board of elections, § 6-101(e)(2), with the advice of the county attorney or county law department, § 6-101(f)(2).[7] See Article 33, § 6-202 (calling for format of petition to be submitted to the chief election official of "the appropriate election authority," who makes an advance determination on its sufficiency with the advice of "the legal authority"). However, the design of the Constitution and the rest of the Election Code leads us to the conclusion that the Legislature intended that a referendum petition concerning a public local law enacted by the General Assembly be processed by the State Board of Elections with the advice of the Attorney General.
 II Analysis
The Constitution assigns to State officials various tasks involved in processing and assessing a referendum petition on any act of the General Assembly. Article XVI of the Constitution requires that such a petition, whether its object is a public general or a public local law, be filed with the Secretary of State, a State constitutional officer. If the Secretary of State determines that the petition requirements of the Constitution have been met, the Secretary refers the law either to the voters of the entire State or, in the case of a public local law, to the voters of a single county. Article XVI, §§ 2, 3. See Barnes v. State, exrel. Pinkney, 236 Md. 564, 576, 204 A.2d 787 (1964). The Constitution likewise assigns to State constitutional officers other tasks involved in the referral of laws enacted by the General Assembly: the Attorney General is to approve any summary to be included as part of a petition, Article XVI, § 4; and the votes cast for and against the referred law are to be returned to the Governor, who is to proclaim the result of the election, Article XVI, § 5(b).
Consistent with the Constitution, the Election Code typically assigns to State officers tasks involved in the referral of acts of the General Assembly. For example, Article 33, § 6-205(a) provides that, if the Constitution requires the filing of a petition with the Secretary of State, the Secretary of State is to deliver the petition to the State Board of Elections, § 6-205(a)(2), and the petition is to be processed as if it had been filed with "the election authority" (i.e., the election authority referred to in § 6-205(a)(2), the State Board of Elections), § 6-205(a)(4).[8] Under § 6-206, it is the chief election official of the election authority with which a petition is filed (i.e., in the case of a petition for the referral of any act of the General Assembly, whether public general or public local law, the State Board of Elections) who reviews the petition and determines its sufficiency. Because, under § 6-206(d), this determination must be consistent with an advance determination made under § 6-202, it logically follows that the State Administrator, acting with the advice of the Attorney General, must also make the advance determination under § 6-202 on any petition seeking to refer an act of the General Assembly.[9]
The responsibility that § 6-205(a) apparently allocates to State officers accords with several provisions in Title 7 of Article 33 (Questions). Under § 7-104(b), it is the duty of the Secretary of State to certify the text to appear on the ballot with respect to "all statewide ballot questions and all questions relating to an enactment of the General Assembly which is petitioned to referendum," while "[e]ach question to be voted on in a single county or part of a county, except a question relating to an enactment of the General Assembly which has been petitioned to referendum"(emphasis added), is to be prepared by the county attorney unless some other process is mandated by law.[10]See also § 7-103(a) (treating the certification to local boards of elections of questions for submission to the voters of one county or part of one county: certification is to be done by a local official, except that questions referred to the voters by the General Assembly itself are to be certified by the State Board of Elections, and questions petitioned to referendum under Article XVI of the Constitution are to be certified by the Secretary of State); § 7-106 (Secretary of State to provide for publication of notice of all questions submitted under Article XVI of the Constitution, although cost of publication may be paid by the county if the question is submitted to voters in only one county).
The same allocation of responsibility is also embodied in § 9-211 of the Election Code, which deals with the arrangement of questions on the ballot. Under § 9-211(b), the Secretary of State is to certify the form of "statewide questions, and any question relating to an enactment of the General Assembly," whereas the appropriate local authority is to certify the form of "a question to be voted on by voters in a single county, other than a question pursuant to an enactment of the General Assembly" (emphasis added). See also Anne Arundel County v. McDonough, 277 Md. 271,290, 354 A.2d 788 (1976) (recognizing distinction between referenda arising under Articles XI-A and XVI of the Constitution and those arising on local questions).
These various provisions demonstrate a constitutional and legislative scheme that generally assigns to State officials determinations respecting the referral of acts of the General Assembly, be they public general or public local laws. Indeed, § 6-101(g), insofar as it would classify as a "local petition" one seeking to refer a public local law enacted by the General Assembly, and thus assign to local officials determinations about the sufficiency of such a petition, is so incompatible with all related provisions of the current Election Code that it appears to be the result of a drafting error.
It is a cardinal rule of statutory construction that provisions dealing with the same subject, especially if enacted at the same time, should be harmonized if at all possible. In reCriminal Investigation, 307 Md. 674, 690, 516 A.2d 976 (1986);Scott v. State, 297 Md. 235, 245-46, 485 A.2d 1126 (1983), appealafter remand, 310 Md. 277, 529 A.2d 340 (1987); State v. Loscomb,291 Md. 424, 432, 435 A.2d 764 (1981). If § 6-101(g)(2)(i) is read literally so that a petition seeking a referendum on a public local law enacted by the General Assembly constitutes a "local petition," and if as a consequence the sufficiency of such a petition is to be determined by the local board of elections with the advice of the county attorney, this would be a unique instance within the pertinent provisions of the Election Code where the General Assembly assigned to local officials judgments touching on the validity and effectiveness of one of its own acts. This appears at odds with the roles in the petition process constitutionally assigned to the Secretary of State, the Attorney General, and the Governor, as well as with the provisions in Titles 7 and 9 of the Election Code for certifying the text to appear on the ballot when any act of the General Assembly is petitioned to referendum.[11]
In addition, the Court of Appeals has declared that, where a literal construction of statutory language would dictate a result at variance with the apparent legislative goal or purpose, "the plain-meaning rule is not rigid." Kaczorowski v. City ofBaltimore, 309 Md. 505, 513, 525 A.2d 628, 632-33 (1987). Seealso Catonsville Nursing Home, Inc. v. Loveman, 349 Md. 560,709 A.2d 749 (1998); Taylor v. Friedman, 344 Md. 572, 582, 689 A.2d 59
(1997). In such situations, if the legislative purpose can be derived by a thorough examination of the statute's context, a non-literal construction that effectuates the evident purpose is to be adopted, even if that construction varies from unambiguous but ill-drafted text. Kaczorowski, supra, 309 Md. at 515. Seealso 84 Opinions of the Attorney General ___ (1999) [Opinion No. 99-007 (March 29, 1999)] (concluding that Maryland Hospital Bond Program was available for bonds issued by the Maryland Industrial Development Financing Authority even though definition section could be read to restrict program to political subdivisions); 82Opinions of the Attorney General ___ (1997) [(Opinion No. 97-011 (May 1, 1997)] (concluding that retailers could continue to collect a "bad check fee" notwithstanding the apparent repeal of legislation authorizing such fees).
In our opinion, the intent underlying § 6-101(g)(2)(i) was to exclude from the term "local petition" public local laws, rather than public general laws, enacted by the General Assembly. If the single word "general" in § 6-101(g)(2)(i) were changed to "local," the inconsistencies noted above would be resolved. The term "local petition" would then include all petitions on which signatures from a single county are counted, with the exception of petitions to refer public local laws enacted by the General Assembly and petitions making nominations for offices where certificates of candidacy are filed with the State Board of Elections.
This reading of § 6-101(g)(2)(i) would also resolve an internal problem with § 6-101(g). Paragraph (1) of the subsection defines a "local petition" as one on which the signatures from only one county may be counted. Paragraph (2) then excludes from the group established by paragraph (1) two specific types of petitions, those seeking the referral of "a public general law enacted by the General Assembly," and those nominating individuals for certain offices. Because a public general law by definition applies statewide or to more than one county, a petition seeking the referral of such a law would necessarily include the signatures of voters from more than one county, and the petition would thus be excluded from the definition of "local petition" under § 6-101(g)(1). Excluding it again under § 6-101(g)(2) would be mere surplusage. The Court of Appeals has repeatedly admonished against statutory constructions that render certain words of a statute "surplusage, superfluous, meaningless or nugatory." E.g., Rose v. Fox Pool Corp., 335 Md. 351, 359,643 A.2d 906 (1994). See also Giant Food, Inc. v. Department ofLabor, Licensing and Regulation, 356 Md. 180, 194, 738 A.2d 856
(1999); Holman v. Kelly Catering, Inc., 334 Md. 480, 485,639 A.2d 701 (1994).
Moreover, reading the definition of "local petition" to exclude petitions that seek to refer any act of the General Assembly would accord with the legislative history of the 1998 recodification of the Election Code. See Chapter 585, Laws of Maryland 1998. That recodification consolidated provisions concerning petitions that appeared throughout the former code in sections dealing with the formation of new parties, with various types of nominations, and with questions. Before the recodification, there was no definition section analogous to current § 6-101. The provision dealing with the form of, and procedures for verifying, "petitions filed under Article XI-A or Article XVI of the Constitution," Former Article 33, § 23-3, clearly assigned authority over those matters to the State Administrative Board of Election Laws, the predecessor to the current State Board of Elections.
Nothing in the January 8, 1998 Report of the Commission toRevise the Election Code, or in the bill, Senate Bill 118 (1998), that was introduced on behalf of the Commission, contained language to alert the General Assembly of any reassignment from the State to the local level of responsibility for handling referenda on public local laws enacted by the General Assembly. Nor did the report or the bill highlight the other incongruities that would result from reading § 6-101(g) literally.
The 1998 revision was not, for the most part, intended to make substantive changes in prior election law, but to better organize Article 33 and make it more understandable, and to make the State Board of Elections a stronger and more effective body with authority to establish election-related policies within the broad parameters of the law. Report of the Commission to Revisethe Election Code, at pp. 2-4. The bill analysis for Senate Bill 118, in its "Highlights of Changes in Law" for Title 6 of proposed Article 33, gave no indication of any substantive change in the allocation of responsibility for handling petition determinations. It merely stated that the State Board of Elections would adopt regulations covering the form and content of petitions, circulation procedures, and verification and counting of signatures, and that verification by random sample would be permitted, if approved by the State Board. Thus, the legislative history also supports the conclusion that use of the phrase "public general law" in § 6-101(g)(2)(i) was a drafting error.
 III Conclusion
Article 33, § 6-101(g), if read literally, would allocate to a local board of elections, advised by the county attorney, determinations about the legal sufficiency of a petition seeking to refer a public local law enacted by the General Assembly. However, such a reading would deviate from the legislative scheme manifested in other provisions of the Election Code and would vary significantly from prior law in a way neither noted nor explained by the recodifiers of the Election Code. Reading § 6-101(g) in this way would also depart from the constitutional pattern of allocating to the Secretary of State and other State constitutional officers responsibility for referenda on all acts of the General Assembly. Finally, under this reading, § 6-101(g)(2)(i) itself would be mere surplusage. For these reasons, we believe that the reference to general "public law" in § 6-101(g)(2)(i) represents a drafting error that should not be given effect.
If § 6-101(g) is read to embody the apparent legislative intent, the related provisions of the Election Code can be harmonized, and paragraph (2)(i) of § 6-101(g) is not mere surplusage. In our opinion, the Legislature intended that sufficiency determinations with respect to a petition seeking to refer a public local law enacted by the General Assembly be handled by the State Board of Elections with the advice of the Attorney General. We recommend that the General Assembly enact clarifying legislation to correct the drafting error in § 6-101(g) by changing "public general law" in paragraph (2)(i) to "public local law."
Very truly yours,
 J. Joseph Curran, Jr. Attorney General
 Judith A. Armold Assistant Attorney General
_________________________ Robert N. McDonald Chief Counsel Opinions and Advice
[1] In your request you also state that you are concerned about the propriety of your possible involvement in those determinations, given that your office advocated passage of the bill while it was before the General Assembly. We do not discuss the ethical issue that you raise. Presumably, however, our interpretation of the Election Code also resolves your ethical concern.
[2] If more than one-third of the required signatures is filed with the Secretary of State before June 1, the deadline for submitting the remainder is extended until June 30. Article XVI, § 3(b).
[3] "A public general law `deals with the public general welfare, a subject which is of significance not just to any one county, but rather to more than one geographical subdivision, or even to the entire state.'" Park v. Board of Liquor LicenseCommissioners for Baltimore City, 338 Md. 366, 378, 658 A.2d 687
(1995).
[4] A public local law is confined in its operation to certain prescribed or defined territorial limits. Park, supra,338 Md. at 378. See also Maryland Constitution, Article XI-A, § 4 (stating that "[a]ny law so drawn as to apply to two or more of the geographical subdivisions of this State shall not be deemed a Local Law"); Article XI-F, § 1 (defining "public local law" for purposes of code home rule provisions to exclude a law that applies to more than one county).
[5] When it recodified the Election Code in 1998, the General Assembly heeded this express limitation by stating at the outset of Title 6 (Petitions): "This title may not be interpreted to conflict with any provision relating to petitions specified in the Maryland Constitution." Article 33, § 6-102(c).
[6] The General Assembly is expressly forbidden by Article XI-A of the Constitution to pass public local laws for a chartered county like Baltimore County "on any subject covered by the [Express Powers Act]". Article XI-A, § 4. However, it may still enact public local laws for chartered counties on subjects not within the counties' express powers.
[7] It is noteworthy that local boards of elections have authority under Article 33, § 2-205 to retain their own attorneys, who are typically not on the staffs of the county attorneys. The reason for assigning to county attorneys the task of advising the local boards on petition matters is not entirely apparent, although it no doubt relates to the involvement of local legislative and executive officials in the submission of local questions to the voters.
[8] Section 6-205(a) cannot reasonably be read to require, under paragraph (2), that a petition under Article XVI of the State Constitution be delivered to the State Board of Elections and then, under paragraph (4), that the petition be processed as if it had been filed with the local board of elections. If the General Assembly had intended to make the local board the decision-maker, there would have been no reason not to direct the Secretary of State, in paragraph (2), to deliver the petition directly to the local board.
[9] This construction of § 6-202 is consistent with Constitution, Article XVI, § 4, which, as noted above, makes it the task of the Attorney General to approve the summary to be included as part of any petition to refer an act of the General Assembly.
[10] Section 7-104(b) tracks Article XVI, § 5, of the Constitution, which assigns to the Secretary of State the task of preparing and submitting a ballot title in connection with any law referred under Article XVI.
[11] We need not attempt to delineate what, if any, functions associated with a referendum on an act of the General Assembly the Legislature could assign to local officials consistent with Article XVI of the Constitution.
 *Page 132