Filed 7/27/21  P. v. De La Cruz CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ALEJANDRO DE LA CRUZ,<br><br>    Defendant and Appellant. | 2d Crim. No. B306524<br>(Super. Ct. No. 2019030890)<br>(Ventura County) |

Alejandro De La Cruz appeals a judgment following his conviction for making criminal threats (Pen. Code, § 422) [1] (count 1); petty theft (§ 484, subd. (a)) (count 2); and possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a)) (count 3).  De La Cruz fell within the purview of the "Three Strikes" law.  The trial court sentenced him to an aggregate prison term of four years.  We conclude, among other things, that 1) substantial evidence supports his conviction for making

---

[1] All statutory references are to the Penal Code unless otherwise stated.

criminal threats, and 2) the court did not err by not instructing the jury on a lesser-included offense.  We affirm.

FACTS

C.A. was an assistant manager at Walmart.  On September 17, 2019, a coworker told her that De La Cruz was "rearranging the candy" at the candy aisle.  C.A. walked to that area and asked De La Cruz, "Is there something I could help you with?" De La Cruz became angry and said she was "profiling him."  He said people like her "need to die."  C.A. asked De La Cruz to leave the store.

De La Cruz told C.A., "I'm going to fucking kill you."  His demeanor changed when he made this threat.  His body "started getting tight."  He was angry.  C.A. believed De La Cruz was going to "act on his threat."  She was "shaking."  She did not know if he had a weapon.  She said, "I thought about my children."

C.A. looked to see if any store employees were near because she did not want to be alone with him.  De La Cruz started walking toward the front of the store.  C.A. "scooted" her way down the aisle toward the front registers.  De La Cruz said the store is "his" store and he "doesn't have to leave."

De La Cruz grabbed a mango and took a bite.  He took a coke.  He refused to pay for those items.  When C.A. told him that he has to pay for the items he took, De La Cruz replied that "this is [his] store and if [she does not] like it, then [she] can leave [his] store."  C.A. told an associate to call 911.

De La Cruz walked out of the store.  C.A. was scared.  She told store security guard Jeremy Marshall what had happened.  The police arrived.

The prosecutor asked C.A., "Did the incident where [De La Cruz] threatened you impact your state of mind for the next 5, 10, 15, 20, 30 minutes?" C.A.: "I believe it did at the time."

C.A. testified that after De La Cruz left the store, she "thought he was going to come back and act on his threat." When the police arrived, she was "still scared."

Dwanesha Jones, a Walmart department manager, testified that C.A. asked her to call 911 because "[C.A. had] just been threatened." C.A. had "a serious look on her face."

Police Officer Jaime Miranda interviewed C.A. He testified she told him that De La Cruz "threatened to kill her." She said "she was afraid." Miranda said, "[T]hat's what I documented." De La Cruz was arrested. He was drinking from a Coca-Cola bottle. He had a gum packet and a plastic baggie containing methamphetamine.

The People presented evidence about a prior incident involving De La Cruz at another Walmart store in 2018. He had taken a bicycle from the store. A store employee followed him. De La Cruz asked the store employee if "a bicycle was worth risking [her] life."

In the defense case, store security guard Marshall testified C.A. did not mention to him that she had been threatened. Later, Marshall said, "I don't remember if she did say that." As a store security guard, Marshall did not ask C.A. the "details" about the incident.

## DISCUSSION

### Substantial Evidence

De La Cruz contends there was insufficient evidence to establish that he committed a criminal threat. We disagree.

3

"On appeal, we must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.) We do not reweigh the evidence or decide the credibility of the witnesses. (*Ibid.*)

"In order to prove a violation of section 422, the prosecution must establish all of the following: (1) that the defendant 'willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person,' (2) that the defendant made the threat 'with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out,' (3) that the threat–which may be 'made verbally, in writing, or by means of an electronic communication device'–was 'on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat,' (4) that the threat actually caused the person threatened '*to be in sustained fear for his or her own safety* or for his or her immediate family's safety,' and (5) that the threatened person's fear was 'reasonabl[e]' under the circumstances." (*People v. Toledo* (2001) 26 Cal.4th 221, 227-228, italics added.)

De La Cruz cites some evidence and claims some inferences support his position. But the issue is not whether some evidence supports appellant, it is whether substantial evidence supports the judgment.

De La Cruz's statement to C.A. constituted an unconditional and unequivocal death threat. He told her, "I'm

going to fucking kill you." (*People v. Toledo, supra,* 26 Cal.4th at p. 235 [words "I am going to kill you" made with the requisite intent "was the type of threat that satisfied the provisions of section 422"].) The words he uttered constituted a fully completed specific threat, without any ambiguity, and they constituted relevant evidence on his specific intent. (*People v. Fierro* (2010) 180 Cal.App.4th 1342, 1348 [defendant's actions and "saying words to the effect that he could and would kill them" were evidence on his specific intent]; *People v. Gaut* (2002) 95 Cal.App.4th 1425, 1432 [" 'A threat is sufficiently specific where it threatens death' "].) This was a threat immediately and personally conveyed to his victim.

The jury also could reasonably infer the manner in which De La Cruz conveyed the threat showed an immediate gravity of purpose and an immediate prospect of execution of the threat. The trier of fact may consider the defendant's "mannerisms," "affect," and actions in making the threat and after the threat. (*People v. Solis* (2001) 90 Cal.App.4th 1002, 1013) De La Cruz was near C.A. when he made the threat. C.A. testified she saw De La Cruz's demeanor change when he made the threat. His eyes "changed" and the "color of his skin changed." He was angry. His body "started getting tight." C.A. testified his actions were unpredictable.

The jury could find De La Cruz's death threat, coupled with his openly aggressive act of taking items without paying, and telling C.A. this is "[his] store," showed a pattern of brazen conduct to intimidate her. C.A. testified she believed De La Cruz was going to "come back and act on his threat." "A threat is not insufficient simply because it does 'not communicate a time or precise manner of execution, section 422 does not require those

5

details to be expressed.' " (*People v. Butler* (2000) 85 Cal.App.4th 745, 752.) C.A. said that "he threatened [her]"; "it scared [her]." She was "in fear for [her] life." She had a coworker call 911. "The words used and the circumstances surrounding the words strongly evince a threat to commit a crime which would result in death . . . ." (*People v. Martinez* (1997) 53 Cal.App.4th 1212, 1222.)

De La Cruz claims his statements were merely emotional "rants of a resentful person" with no criminal intent. "Section 422 was not enacted to punish emotional outbursts, it targets only those who try to instill fear in others." (*People v. Felix* (2001) 92 Cal.App.4th 905, 913.)

Here the jury rejected De La Cruz's claims that his statements were merely emotional rants made without the requisite criminal intent under section 422. The jury was instructed that jurors could not convict De La Cruz of this offense unless they found "the defendant *intended* that his statement *be understood as a threat*" and that "it communicated to [C.A.] a *serious intention* and the *immediate prospect* that the threat would be carried out." (Italics added.) De La Cruz has not shown these elements were unsupported by this record. Given the instructions, had the jury believed he made only an emotional rant, there would not have been a guilty verdict.

Moreover, whether the defendant intended his words to be taken as a threat "can be based on all the surrounding circumstances." (*People v. Franz* (2001) 88 Cal.App.4th 1426, 1446.) The People suggest the jury could reasonably infer his threat was intentionally made to achieve a goal. They note that De La Cruz said he could "leave" the store, and that he had the goal of not "paying for the merchandise." From the record a

reasonable inference is that C.A. had confronted him while he was about to commit a crime. The jury could reasonably infer he threatened her because she discovered what he was doing and his death threat was calculated to intimidate her so she would not report his activity. The People presented evidence showing that De La Cruz had made death threats to female employees at two Walmart stores in his attempts to steal items.

C.A. testified that, after his death threat, "[she] didn't want to be alone" there with him. She "scooted" down the aisle with her back to the candy wall. She backed up with her back against the shelf. C.A. testified, "I didn't want my back to be facing him." The People note her conduct supported her testimony about her fear. De La Cruz has not shown why the jury could not find C.A.'s fear to be " 'reasonabl[e]' under the circumstances." (*People v. Toledo*, *supra*, 26 Cal.4th at p. 228.)

De La Cruz claims there was no evidence that he had the " 'means of accomplishing the threat.' " But this offense " 'does not require an immediate ability to carry out the threat.' " (*People v. Wilson* (2010) 186 Cal.App.4th 789, 807.) De La Cruz notes that he was not armed. But he was not convicted of a weapons offense, and the statute does not require the offense to be committed with a weapon. Moreover, C.A. testified she did not know whether De La Cruz had a weapon when he made the threat or what he would do.

De La Cruz contends there was insufficient evidence that C.A. was in "sustained" fear. We disagree.

Sustained fear involves a period of time that is beyond "momentary, fleeting, or transitory." (*People v. Allen* (1995) 33 Cal.App.4th 1149, 1151, 1153, 1156; *People v. Fierro*, *supra*, 180 Cal.App.4th at p. 1348 [sustained fear finding affirmed where the

7

fear lasted 15 minutes after the defendant drove away].)  "[A] victim can experience sustained fear even if the fear exists only during the incident itself, as long as the fear during the incident is more than 'momentary, fleeting, or transitory.' "  (*People v. Brugman* (2021) 62 Cal.App.5th 608, 634.)

Sustained fear is fear that is not " 'instantly over.' "  (*People v. Culbert* (2013) 218 Cal.App.4th 184, 191.)  "When one believes he is about to die, a minute is longer than 'momentary, fleeting, or transitory.' "  (*People v. Fierro*, *supra,* 180 Cal.App.4th at p. 1349.)

The jury could reasonably infer C.A. believed she was about to die.  C.A. testified she was "shaking" in fear after De La Cruz made the death threat.  She immediately thought about her "children."

De La Cruz claims C.A.'s fear was only momentary.  But the evidence does not support that claim.  C.A. testified that she backed up with her back against a shelf for three to four minutes. She did this because she did not want her "back to be facing him." C.A. said that even after De La Cruz left the store, her fear continued.  She testified, "I thought he was going to come back and act on his threat."  "[I]f he didn't go to jail, I was afraid he was going to come back into the store . . . ."  She testified her fear lasted up to 30 minutes.  By convicting De La Cruz, the jury necessarily found "[t]he threat actually caused [C.A.] to be in sustained fear for her own safety."  This finding about sustained fear was also supported by the testimony of Jones and Miranda. De La Cruz has not shown the evidence is insufficient.

*Instructional Error*

De La Cruz contends the trial court erred in failing to issue sua sponte an instruction for the lesser-included offense of attempted threat. We disagree.

Attempted criminal threat is a lesser-included offense of the section 422 crime. "[I]f a defendant, . . . acting with the requisite intent, makes a sufficient threat that is received and understood by the threatened person, but, for whatever reason, the threat does not *actually* cause the threatened person to be in sustained fear for his or her safety even though, under the circumstances, that person reasonably could have been placed in such fear, the defendant properly may be found to have committed the offense of attempted criminal threat." (*People v. Toledo*, *supra*, 26 Cal.4th at p. 231.)

The trial court has a duty to instruct on lesser-included offenses "whenever evidence that the defendant is guilty *only* of the lesser offense is 'substantial enough to merit consideration' by the jury." (*People v. Breverman* (1998) 19 Cal.4th 142, 162, italics added.) "[T]he existence of '*any* evidence, no matter how weak' will not justify instructions on a lesser included offense . . . ." (*Ibid.*)

De La Cruz contends a lesser-included instruction on attempted criminal threat was required because there was evidence "that could have led a jury to entertain a reasonable doubt as to whether [his] actions *actually* caused [C.A.] to be in sustained fear."

The People respond that 1) "[e]vidence of the sustained fear element was substantial," and 2) "there was simply no evidence from which a jury could conclude that [De La Cruz] committed an attempted criminal threat but not a completed one." We agree.

9

"An instruction on a lesser included offense must be given *only* if there is substantial evidence from which a jury could reasonably conclude that *the defendant committed the lesser, uncharged offense but not the greater, charged offense.*" (*People v. Thomas* (2012) 53 Cal.4th 771, 813, italics added.)

Here the evidence of C.A.'s sustained fear was strong. She testified at the time of the death threat she was "shaking." She did not know if De La Cruz had a weapon or how he would react. Her fear lasted up to 30 minutes. When the police arrived, C.A. said, "I'm still scared." "I thought he was going to come back and act on his threat." "[W]e called the cops on him" "[I]f he didn't go to jail, I was afraid he was going to come back into the store . . . ."

De La Cruz has not shown that a reasonable juror would conclude that he had committed *only* an attempted criminal threat based on the evidence about sustained fear. He claims C.A.'s demeanor after the incident showed "the fleeting nature" of her fear. The defense at trial claimed C.A. was not credible in claiming sustained fear and that Miranda was not credible in his testimony about her fear. But the jury rejected these credibility claims. De La Cruz has not cited to any evidence showing that C.A. had any motive to falsify or exaggerate her testimony about her fear. The People note, "If any [juror] believed such fear was lacking, the jury as a whole would not have convicted [De La Cruz of] criminal threats."

Moreover, the evidence De La Cruz cites does not support the lesser-included instruction. He contends C.A. did not mention fear to her other store employees, and after De La Cruz left the store, she did not appear to show physical signs of distress. But C.A. told Jones to call 911 because she had been

threatened. When asked about C.A.'s demeanor, Jones testified C.A. had "a serious look on her face."

Moreover, C.A.'s outward appearance was not an indication of lack of fear. A person's outward conduct or demeanor does not necessarily reflect his or her inner feelings or emotions. (Cf. *People v. Mayfield* (1993) 5 Cal.4th 142, 168; *State v. Smith* (Utah 1995) 909 P.2d 236, 241 [victim's "withdrawn demeanor" may be caused by fear or other emotions]; *Harris v. State* (Md.Ct.App. 1988) 539 A.2d 637, 640, fn. 2 ["outward demeanor does not always accurately reflect one's underlying mental state"].) C.A. testified that as a store manager she was "trying to stay strong" even though she was in fear, and the jury found her to be credible. De La Cruz notes that his encounter with C.A. did not last long. But a relevant factor is that her "fear continued . . . after" he left the store. (*People v. Fierro*, *supra*, 180 Cal.App.4th at p. 1349, fn. 6.)

The defense called store security guard Marshall. But this testimony was not helpful to De La Cruz. Marshall initially said C.A. did not state that she had been threatened. But later, he admitted, "I don't remember if she did say that." De La Cruz claims C.A. did not discuss the details of the incident with Marshall. But De La Cruz has not shown why C.A. would be expected to discuss the "details" of crimes with store employees or a security guard after the police had been called. Marshall was not conducting the criminal investigation of De La Cruz. C.A. only quickly contacted Jones to call 911. Given the short emergency time constraints, jurors could reasonably infer store employees were not in a position to conduct a detailed interview with C.A. before the police arrived.

11

De La Cruz notes that Police Officer Miranda testified he had a "casual conversation" with C.A. He suggests this evidence about C.A.'s demeanor impeaches her credibility. But this conversation occurred when she was interviewed after De La Cruz left the store and after the police detained him. Jurors could reasonably infer C.A. may have experienced relief at being in the presence of a police officer, but that "is not the same thing . . . as having one's fear evaporate." (*People v. Culbert*, *supra*, 218 Cal.App.4th at p. 191.) C.A. said she was trying to be strong as a store manager.

Moreover, Miranda's testimony did not impeach C.A.'s credibility; it supported her claim of fear. Miranda testified C.A. said that "she was afraid," and "that's what [he] documented." In opposing a defense claim that his interview technique was suggestive, Miranda testified that while interviewing her he determined "her mindset" was that "fear had been instilled already." Her statement to him about her fear "accurately depicted" how she felt. De La Cruz's argument omits consideration of Miranda's highly corroborative evidence. A defendant's speculative inferences drawn from only portions of weak evidence "will not justify instructions on a lesser included offense." (*People v. Breverman*, *supra*, 19 Cal.4th at p. 162.) The defense case was weak.

Moreover, even had De La Cruz shown instructional error, the result would not change. Many of the claims De La Cruz now raises about lack of sustained fear are essentially claims his trial counsel argued to the jury. But the jury's verdict was a rejection of those claims. (*People v. Campbell* (2015) 233 Cal.App.4th 148, 167 [jury's finding on a common factual issue required by other

instructions is relevant in deciding whether the alleged instructional error is prejudicial].)

Given the strength of the People's case, it is not reasonably probable a more favorable result would have been obtained absent the alleged instructional error.  (*People v. Beltran* (2013) 56 Cal.4th 935, 955.)

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.

GILBERT, P. J.

We concur:

YEGAN, J.

TANGEMAN, J.

13

Benjamin F. Coats, Judge

Superior Court County of Ventura

_____

Miriam R. Arichea, under appointment by the Court of Appeal, for Defendant and Appellant.

Matthew Rodriquez, Acting Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and Lindsay Boyd, Deputy Attorneys General, for Plaintiff and Respondent.